IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| DAVID B.,[1] | ) |
| | ) |
|     *Plaintiff*, | ) |
| | ) |
|     v. | )   Civil No. 3:24-cv-623 (REP) |
| | ) |
| FRANK BISIGNANO, | ) |
| Commissioner of Social Security,[2] | ) |
| | ) |
|     *Defendant*. | ) |
| | ) |

**REPORT AND RECOMMENDATION**

In this action, Plaintiff David B. seeks review of the Commissioner of the Social Security Administration's ("SSA") decision to deny his Title XVI application for Supplemental Security Income ("SSI"). This matter comes before the Court for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment. (ECF Nos. 5, 10, 12.) The motions have been fully briefed (ECF Nos. 10, 12, 13), making this matter ripe for review.

Plaintiff requests that the Commissioner's decision be vacated and remanded for a *de novo* hearing and new decision. (ECF No. 10, at 10.) As the basis for such relief, Plaintiff argues that the Administrative Law Judge ("ALJ") failed to properly evaluate the effect of his obesity on his other impairments in determining his residual functional capacity ("RFC") assessment. (ECF No. 10, at 5-10.) In response, the Commissioner contends that the ALJ articulated how she considered

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants by their first names and last initials in social security cases.

[2] Frank Bisignano was sworn in as the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he has been substituted for the former Acting Commissioner as Defendant in this action. 42 U.S.C. § 405(g). No further action need be taken. 42 U.S.C. § 405(g).

Plaintiff's obesity throughout her decision and further argues that Plaintiff has not identified any specific evidence demonstrating additional functional limitations related to obesity that the ALJ failed to consider. (ECF No. 12, at 14-19.)

For the reasons set forth below, the Court finds that the ALJ applied the correct legal standard and considered the cumulative effects of obesity and Plaintiff's other impairments. Because substantial evidence supports the ALJ's decision, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 10) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 12) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

## I.     PROCEDURAL HISTORY

Plaintiff filed a prior application for SSI on July 1, 2019, alleging disability beginning on March 1, 2016. (Administrative Record ("R.") at 65.)[3] After an administrative hearing, Plaintiff was denied benefits on April 6, 2021. (R. at 62.) He did not appeal.

Plaintiff filed another application for SSI on July 15, 2021, alleging disability beginning on April 7, 2021. (R. at 81.) In his application, Plaintiff alleged that he suffered from depression, back pain, lumbar radiculopathy, coronary artery disease, obesity, hernia, high blood pressure, gastroesophageal reflux disease ("GERD"), hyperlipidemia, sleep apnea, and diabetes. (R. at 82.) The SSA denied Plaintiff's claim initially and again upon reconsideration. (R. at 81, 102.) Plaintiff requested a hearing before an ALJ, and one was held on October 23, 2023. (R. at 32-61, 127.) At

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers from this Report and Recommendation. The Court will further restrict its discussion of Plaintiff's medical information to the extent necessary to result in a proper analysis of the case.

the administrative hearing, the ALJ granted Plaintiff's oral and written motion to amend the alleged onset date of disability to October 23, 2023. (R. at 38, 237.)

On January 9, 2024, the ALJ issued a written decision, finding Plaintiff not disabled under the Social Security Act ("the Act") since July 15, 2021, the date of Plaintiff's application. (R. at 19-26.) On July 11, 2024, the SSA Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (R. at 1-3.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.   STANDARD OF REVIEW

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual has a disability "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A).

SSA regulations set forth a five-step process to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation). At step one, the ALJ reviews the claimant's current work activity to determine if he or she has been participating in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. *Id.* § 416.920(a)(4)(ii). At step three, the ALJ determines whether the medical impairments meet or equal an impairment listed in the

regulations. *Id.* § 416.920(a)(4)(iii). Between steps three and four, the ALJ determines the claimant's RFC, which accounts for the most that the claimant can do despite his or her impairments. *Id.* § 416.920(a).

At step four, the ALJ assesses whether the claimant can perform his or her past employment given his or her RFC. *Id.* § 416.920(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, and the claimant must prove that his or her limitations preclude the claimant from performing his or her past relevant work. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). If such past work can be performed, then benefits will not be awarded, and the analysis ends. *See* 20 C.F.R. § 416.920(e). However, if the claimant cannot perform his or her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant can perform other work that is available in the national economy. *See id.* § 416.920(a)(4)(v). The Commissioner usually offers this evidence through the testimony of a vocational expert. *See Mascio*, 780 F.3d at 635.

In reviewing a decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Id.* at 634 (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *See Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence standard "presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts." *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73

(8th Cir. 1988)).  Thus, a decision by the Commissioner is not subject to reversal merely because substantial evidence would have supported a different conclusion.  *Id.*

To determine whether substantial evidence exists, the Court must examine the record as a whole, but may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]."  *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)); *see Craig*, 76 F.3d. at 589.  The Court must consider the support for the Commissioner's decision and "whatever in the record fairly detracts from its weight."  *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)).  If a fact is supported by substantial evidence, the Court must affirm, regardless of whether the Court agrees with such findings.  *Hancock*, 667 F.3d at 476 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)).  If the Commissioner's findings are arbitrary or unjustified, then they are not supported by substantial evidence, and the Court must reverse the decision.  *See Breeden*, 493 F.2d at 1007.

### III.    THE ALJ'S DECISION

The ALJ analyzed Plaintiff's disability claim under the five-step evaluation process.  (R. at 19-26); *see* 20 C.F.R. § 416.920(a)(4); *Mascio*, 780 F.3d at 634.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 23, 2023 (the amended alleged onset date).  (R. at 22.)

At step two, the ALJ found Plaintiff had severe impairments of ischemic heart disease, obesity, diabetes mellitus, and degenerative disc disease.  (R. at 22.)  Specifically, the ALJ acknowledged that those "medically determinable impairments," including Plaintiff's obesity, "significantly limit [his] ability to perform basic work activities . . . ."  (R. at 22.)

At step three, the ALJ concluded that Plaintiff did not have an impairment, individually or in combination, which met or medically equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 23.) In arriving at this conclusion, the ALJ addressed specific listings and then expressly stated that she "considered" Plaintiff's "obesity in connection with the listed impairments, as required by . . . SSR 19-2p," the applicable ruling for consideration of the effects of obesity. (R. at 23.) The ALJ concluded that Plaintiff's "obesity, both singly and in combination with his other impairments, do[es] not medically equal" any listing. (R. at 23.)

The ALJ then determined Plaintiff's RFC. (R. at 23-26.) Based on the record, the ALJ found that Plaintiff retained the ability to perform light work as defined by 20 C.F.R. § 416.967(b) with the following limitations: "[Plaintiff] can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; but never climb ladders, ropes, or scaffolds. [Plaintiff] cannot be exposed to hazards, such as unprotected heights or machinery with open, moving parts." (R. at 23.)

In arriving at the RFC, the ALJ first summarized Plaintiff's subjective complaints. (R. at 24.) Plaintiff testified that his bodyweight, diabetes, back issues, and poor circulation in his feet prevent him from being able to return to work. (R. at 24.) Regarding activities of daily living, Plaintiff stated he could perform self-care, complete simple household chores "for an hour multiple times per week," run errands, drive, and shop "for up to one hour." (R. at 24.)

The ALJ acknowledged Plaintiff's "history of ischemic heart disease, obesity, diabetes, and degenerative disc disease" but emphasized the inconsistences between Plaintiff's alleged limitations and the objective, recent medical evidence. (R. at 24.) Specifically, the ALJ concluded that "there [was] little indication of acute limitations associated with any of these conditions" during the relevant time. (R. at 24.) The ALJ considered recent treatment records that showed Plaintiff's diabetes was "mostly controlled," with glycated hemoglobin ("A1C") readings between

6

eight and nine. (R. at 24.) The ALJ also considered a recent electrocardiogram and found Plaintiff's heart disease did not affect his current heart function. (R. at 24.) In addition, the ALJ considered recent imaging showing Plaintiff had mild degenerative disc disease. (R. at 24.) The ALJ noted that Plaintiff generally presented for routine examinations and that "the record d[id] not contain any treatment information after the [Plaintiff's] alleged onset date" as amended. (R. at 24.) The ALJ again highlighted Plaintiff's activities of daily living, including his ability to perform self-care, complete simple household chores, run errands, and drive despite his impairments. (R. at 24.) For these reasons, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (R. at 24.)

The ALJ also considered the medical opinions and prior administrative medical findings, including the opinion of consultative examiner Augustina Nyeche, NP ("NP Nyeche"), and the opinions of two state agency medical consultants, Daniel Camden, M.D., and Joseph Duckwall, M.D., who both reviewed Plaintiff's medical records. (R. at 25-26.)

Following a February 2022 examination, NP Nyeche opined that Plaintiff could perform light work but could only walk four hours in an eight-hour workday, occasionally bend, and never stoop, kneel or squat. (R. at 25.) The ALJ found NP Nyeche's opinion unpersuasive, explaining that her opinion was not generally consistent with the record and inconsistent with Plaintiff's daily activities. (R. at 25.) Specifically, the ALJ explained that Plaintiff "would not be able to perform any activities of daily living if he were unable to stoop, kneel, or squat." (R. at 25.)

In March 2022, Dr. Camden opined that Plaintiff could perform light work but could never climb ladders, ropes, or stairs and should avoid concentrated exposure to temperature extremes and humidity. (R. at 25.) The ALJ found Dr. Camden's opinion generally persuasive but

concluded that the record at the hearing level supported greater postural and environmental limitations. (R. at 25.)

In January 2023, Dr. Duckwall found Plaintiff capable of light work but also concluded that Plaintiff could only occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; could never climb ladders, ropes, or scaffolds; and should avoid all exposure to unprotected heights and heavy machinery. (R. at 25.) The ALJ found Dr. Duckwall's findings consistent with the record evidence, supported by his assessment of Plaintiff's treatment history, and persuasive. (R. at 25.)

After determining the RFC, the ALJ found at step four that Plaintiff could perform his past relevant work as a delivery truck driver, as he actually performed the position at a light exertional level. (R. at 26.) Therefore, the ALJ found Plaintiff not disabled from July 15, 2021 (the date of the SSI application) through January 9, 2024 (the date of the decision). (R. at 26.)

## IV.     ANALYSIS

As his sole assignment of error, Plaintiff argues that the ALJ failed to properly evaluate how his obesity impacted his RFC assessment in violation of Social Security Ruling 19-2p and 20 C.F.R. § 416.945(a)(2). (ECF No. 10, at 5-10; ECF No. 13, at 1-4.) Specifically, Plaintiff asserts that "the ALJ did not *explain* – as the regulation requires – *how* obesity impacted the function-by-function analysis." (ECF No. 13, at 2.) The Commissioner, on the other hand, contends that the ALJ considered Plaintiff's impairments, including his obesity and any cumulative effects, and sufficiently articulated why she found the limitations reflected in the RFC sufficient. (ECF No. 12, at 14-16.)[4]  Although the ALJ's decision could have been more detailed, the discussion

---

[4] The Commissioner further argues that Plaintiff failed to meet his burden of showing how obesity limits his functional capacity. (ECF No. 12, at 16.) The Court disagrees. The record evidence supports the ALJ's finding that Plaintiff's obesity qualified as a severe impairment, and Plaintiff

provided, in particular the ALJ's consideration and adoption of medical opinion evidence, "build[s] an accurate and logical bridge from the evidence to [her] conclusions." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016). Therefore, remand is not warranted.

While obesity is not a listed impairment, "the functional limitations caused by the [medically determinable impairment] of obesity, either alone or in combination with another impairment(s), may medically equal a listing." SSR 19-2p, 2019 WL 2374244, at *2 (May 20, 2019). Social Security Ruling 19-2p recognizes that obesity can affect a person's exertional functions (such as sitting, standing, walking, lifting, carrying, pushing, and pulling), non-exertional functions (such as climbing, balancing, stooping, kneeling, crouching, and crawling), and environmental limitations (such as ability to tolerate extreme heat, humidity, or hazards). *Id.* at *4. In addition, obesity may affect a person's ability to manipulate objects as well as a person's range of motion in the skeletal spine and extremities due to increased stress on weight-bearing joints. *Id.*

---

provided evidence regarding the limiting effects of his obesity through his testimony, function report, and treatment records. In this way, Plaintiff's case is different than those cited by the Commissioner in which the claimants did not allege obesity as an impairment in their disability applications. (ECF No. 12, at 16;) *see Watkins v. Comm'r of Soc. Sec. Admin.*, No. 1:20-cv-380, 2022 WL 1101760, at *4 (W.D.N.C. Jan. 21, 2022) (holding plaintiff did not meet his burden where he "did not list obesity as a condition that limits his ability to work"), *report and recommendation adopted*, 2022 WL 822166 (W.D.N.C. Mar. 18, 2022); *Thomas v. Colvin*, No. 1:13-cv-1294, 2014 WL 2611720, at *13 (D.S.C. June 11, 2014) (finding plaintiff did not meet his burden where he "did not allege obesity as an impairment in his Disability Reports" or allege that "his obesity placed any limitations on his functional capacity"); *Ely v. Colvin*, No. 1:12-cv-75, 2014 WL 2967913, at *15-16 (M.D.N.C. July 1, 2014) (finding the ALJ did not err in failing to consider obesity "severe" at step two or during the RFC assessment where plaintiff did not list obesity on his application). Unlike those cases, Plaintiff *did* list obesity as an impairment on his initial disability application (R. at 82), and the ALJ also concluded that obesity was a severe impairment (R. at 22). As discussed below, however, Plaintiff has not shown any error in the ALJ's RFC analysis or that his obesity justified additional limitations other than those in the RFC determination.

Thus, the ALJ "must consider 'the limiting effects of obesity' in determining the RFC, and must explain the conclusion whether obesity causes any limitations." *Daisy F. v. Kijakazi*, No. 2:21-cv-563, 2022 WL 18936086, at *7 (E.D. Va. Dec. 15, 2022) (citing SSR 19-2p), *report and recommendation adopted sub nom.*, *Carl F. v. Kijakazi*, 2023 WL 2352827 (E.D. Va. Mar. 3, 2023). A "total failure to mention obesity would be contrary to Social Security regulations" and would justify remand. *Id.* at *7. Other courts have also remanded "[w]hen ALJs generally mention obesity without including analysis or discussing the relationship between obesity and other physical impairments and functional abilities." *Id.*; *see also Kimberly W. v. Comm'r Soc. Sec.*, No. 4:19-CV-00023, 2021 WL 827075, at *5 (W.D. Va. Mar. 3, 2021), *report and recommendation adopted*, 2021 WL 1232101 (W.D. Va. Mar. 31, 2021). "By contrast, district courts have affirmed decisions similar to the one at issue in this case in which the ALJ did not articulate a detailed discussion but showed that he or she considered the applicable law and cumulative effects of the claimant's obesity." *Kevin F. v. O'Malley*, No. 5:23-cv-305, 2024 WL 604747, at *8 (S.D. W. Va. Jan. 26, 2024) (citing cases). While Plaintiff argues that "[m]ore is required" on top of "mentioning obesity in general terms," (ECF No. 10, at 7), the ALJ's analysis and consideration of medical opinion evidence sufficiently articulates how she considered Plaintiff's obesity in arriving at the RFC, serves as the "more" required, and provides the opportunity for meaningful judicial review.

At step two, the ALJ found Plaintiff's obesity to be severe. (R. at 22.) At step three, the ALJ expressly acknowledged her obligation under SSR 19-2p to consider Plaintiff's obesity in connection with other impairments. (R. at 23.) She found that Plaintiff's obesity, both alone and in combination with other impairments, did not medically equal any listings. (R. at 23.)

In the RFC analysis, the ALJ noted Plaintiff's testimony that he could not work in part due to his bodyweight, as well as other conditions, including back issues and poor circulation in his feet. (R. at 24 (citing Hearing Testimony [R. at 48-53]).) The ALJ also acknowledged Plaintiff's history of obesity, as reflected in his treatment notes. (R. at 24 (citing Exhibits B9F, B11F-B18F).) The exhibits considered by the ALJ contained numerous references to Plaintiff's weight and BMI. (*See, e.g.*, R. at 476 (Exhibit B10F); R. at 483, 486, 489 (Exhibit B11F); R. at 530 (Exhibit B12F); R. at 549 (Exhibit B13F); R. at 552, 562, 567, 572, 578 (Exhibit B14F); R. at 594, 596 (Exhibit B16F); R. at 610, 615 (Exhibit B17F); R. at 625, 628, 631 (Exhibit B18F).)[5]

But the ALJ also found that the medical records did not support the level of limitations alleged by Plaintiff. (R. at 24.) Specifically, the records contained "little indication of acute limitations associated with any of [Plaintiff's] conditions," including his obesity. (R. at 24.) The ALJ elaborated that, according to the medical records, Plaintiff's diabetes was mostly controlled with A1C readings between eight and nine throughout recent treatment records (R. at 24, 508, 520, 589, 596, 621, 628, 630, 631), his heart condition was not affecting his heart function (R. at 24 (citing Exhibit B14F [R. at 551-79])), his degenerative disc disease was mild (R. at 24 (citing Exhibit B15F [R. at 580-81])), and Plaintiff generally presented for routine visits (R. at 24 (citing

---

[5] While Plaintiff argues that "the ALJ never mentions Plaintiff's weight or BMI throughout any of the evidentiary discussion," (ECF No. 10, at 8-9), the decision makes plain that the ALJ considered the record evidence, which included multiple references to Plaintiff's weight and BMI. The ALJ's general citation to exhibits does not constitute error. "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his [or her] decision . . . ." *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (per curiam) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)). Moreover, "an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Massey v. Astrue*, No. 3:10-cv-2943, 2012 WL 909617, at *2 (D.S.C. Mar. 16, 2012) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)); *see also Blaine v. Astrue*, No. 4:09-cv-104, 2010 WL 3291824, at *3 n.7 (E.D. Va. June 3, 2010), *report and recommendation adopted*, 2010 WL 3291825 (E.D. Va. Aug. 18, 2010) (noting that "the ALJ's failure to specifically cite to [referenced] evidence does not imply that he did not consider all of the available evidence in making his decision").

Exhibits B11F-B18F [R. at 479-636]); *see, e.g.*, R. at 485-87 (runny nose, cold, cough, sneezing); R. at 488-90 (seasonal allergies, upset stomach, and GERD); R at 627-29 (indigestion and acid reflux); R. at 504-50, 621-26 (follow-up for diabetes)).  In addition, the record did not contain treatment information post-dating Plaintiff's alleged onset date, as amended.  (R. at 24.)  The ALJ also contrasted Plaintiff's testimony that he could not work due to his obesity and other conditions with Plaintiff's activities of daily living, including his ability to perform self-care, complete simple household chores, run errands, shop in stores, and drive.  (R. at 24 (citing Hearing Testimony [R. at 42, 50-53] and Exhibits B3E, B7E [R. at 249-58, 278-88]).)

In addition to the above analysis, the ALJ considered the medical opinions and prior administrative medical findings in determining Plaintiff's RFC.  (R. at 23-24.)  Specifically, the ALJ rejected NP Nyeche's opinion that Plaintiff could never stoop, kneel, or squat as unpersuasive, in part because Plaintiff admitted to being able to perform various activities of daily living which he would be unable to perform if he could not stoop, kneel, or squat.  (R. at 25.)  In contrast, the ALJ found the opinions of the state agency medical consultants persuasive.

Dr. Camden noted that Plaintiff may become short of breath at times due to his cardiac condition and obesity.  (R. at 86.)  He stated that Plaintiff should never climb ladders because of his BMI and diabetes.  (R. at 87.)  Dr. Camden also noted that Plaintiff's hernia impacted his ability to lift and that Plaintiff could not receive a hernia repair due to his obesity.  (R. at 83.)  Dr. Camden found Plaintiff capable of light work but opined that Plaintiff should never climb ladders, ropes, or scaffolds due to his weight and diabetes.  (R. at 86-87.)  Dr. Camden did not find any environmental limitations or postural limitations regarding climbing ramps or stairs, balancing, stooping, kneeling, crouching, or crawling.  (R. at 87.)  The ALJ found Dr. Camden's opinion generally persuasive but adopted greater postural and environmental limitations based on

12

additional evidence presented at the hearing level. (R. at 25.) Specifically, the ALJ determined that Plaintiff could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl and could not be exposed to hazards such as unprotected heights or machinery with open, moving parts. (R. at 23, 25.)

Like Dr. Camden, Dr. Duckwall concluded that Plaintiff's obesity contributed to shortness of breath and prevented Plaintiff from climbing ladders, ropes, and scaffolds. (R. at 96, 98.) Dr. Duckwall acknowledged Plaintiff's BMI but also noted that the record showed Plaintiff capable of walking and performing routine household work. (R. at 99.) Dr. Duckwall concluded that Plaintiff could perform light work but should never climb ladders, ropes, or scaffolds, could perform other climbing and postural movements occasionally, and should avoid all exposure to hazards, such as moving machinery and heights. (R. at 97-98.) The ALJ found Dr. Duckwall's opinion persuasive and crafted an RFC closely aligned with his findings. (R. at 25.)

Thus, in addition to providing her own analysis of Plaintiff's obesity and other impairments and their resulting limitations, the ALJ considered the above medical findings. Both Drs. Camden and Duckwall discussed Plaintiff's obesity, alone and in combination with Plaintiff's other impairments, in setting forth the respective limitations they assigned. The ALJ evaluated those findings and found them persuasive, ultimately adopting an RFC closely aligned with Dr. Duckwall's opinion. In doing so, the ALJ properly considered Plaintiff's obesity and explained how it resulted in the limitations included in the RFC.[6] *Kevin F.*, 2024 WL 604747, at *8 (finding

---

[6] Plaintiff acknowledges that "[t]he ALJ appears to formulate the RFC based upon the opinions of the state agency medical consultants" but contends that such reliance does not cure any error in the RFC analysis for two reasons. (ECF No. 10, at 9; ECF No. 13, at 4.) Both arguments do not persuade.
   First, Plaintiff contends that the ALJ failed to explain why she adopted greater postural and environmental limitations than those recommended by Dr. Camden. (ECF No. 10, at 9; ECF No. 13, at 4.) To the contrary, as discussed above, the ALJ noted that additional records were received

remand inappropriate even though "[t]he ALJ's RFC analysis of Claimant's obesity is admittedly brief and formulaic" because the ALJ still "considered the impact of Claimant's obesity on his pain, other symptoms, and limitations" and "was also persuaded by" a medical opinion "based on [the doctor's] review of the record, including Claimant's moderate obesity"); *Lehman v. Astrue*, 931 F. Supp. 2d 682, 691-92 (D. Md. 2013) (finding "lack of obesity analysis" does not justify remand where "the ALJ relies on doctors' reports that make reference to plaintiff's weight"); *Smith v. Astrue*, No. 8:10-cv-2624, 2012 WL 786944, at *16 (D.S.C. Jan. 18, 2012), *report and recommendation adopted*, 2012 WL 786853 (D.S.C. Mar. 9, 2012) (finding no error where "the ALJ largely adopted the limitations suggested by Plaintiff's physicians and the consultative examiners"); *Hynson v. Astrue*, No. 1:10-cv-175, 2011 WL 2175035, at *4 (D. Md. June 2, 2011)

---

at the hearing level which supported greater restrictions. (R. at 25.) The ALJ also found Dr. Duckwall's greater limitations persuasive, and Dr. Duckwall explained that the environmental and postural limitations stemmed from Plaintiff's obesity and diabetes. (R. at 25, 95-99.)

     Second, Plaintiff questions how the ALJ could have found Drs. Camden and Duckwall's opinion persuasive when they found Plaintiff incapable of returning to his past work as a truck driver and the ALJ found the opposite. (ECF No. 10, at 9; ECF No. 13, at 4; *see also* R. at 88, 99.) As an initial matter, Drs. Camden and Duckwall's findings about whether or not Plaintiff's RFC prevented him from doing past relevant work pertain to an issue reserved to the Commissioner; as such, those findings were "inherently neither valuable nor persuasive," and the ALJ need "not provide any analysis about how [she] considered such evidence in [her] determination or decision." 20 C.F.R. §§ 416.920b(c), 416.920b(c)(3)(vii); *see also Jesse T. v. Kijakazi*, No. 2:22-cv-101, 2022 WL 19561148, at *10 (E.D. Va. Nov. 21, 2022) ("Statements about whether an individual's RFC prevents them from completing past relevant work relate to an issue reserved to the Commissioner, and therefore, that evidence is neither valuable nor persuasive."), *report and recommendation adopted*, 2023 WL 2537283 (E.D. Va. Mar. 16, 2023).

     In any event, even though truck driving is generally performed at the medium exertional level, the ALJ concluded that Plaintiff could perform his past relevant work as *actually* performed. (R. at 26.) In so finding, she relied on Plaintiff's testimony regarding his job duties and the vocational expert's testimony regarding proper classification of Plaintiff's past relevant work. (R. at 26, 46-47, 55-56 (classifying Plaintiff's prior work as "the work of a tractor trailer truck driver . . . classified at medium; *performed at light*" and stating that a hypothetical person with Plaintiff's RFC could perform the past relevant work "*as performed*; *not* as classified") (emphases added).) Plaintiff does not challenge the ALJ's step four finding in this appeal, and the ALJ's step four conclusions find substantial support in the evidentiary record.

14

(stating that "it would have been helpful for the ALJ to include a more detailed discussion regarding Claimant's obesity" but declining to remand because the ALJ's "adoption of virtually all of [the consultative examiner's] limitations demonstrates sufficient consideration").

The cases relied on by Plaintiff actually counsel against remand under the circumstances presented in this social security appeal. (ECF No. 10, at 6-8.) In *Daisy F.*, the ALJ found the claimant's obesity a severe impairment that did not meet any listing but "nowhere in the rest of [the ALJ's] [d]ecision d[id] she explain *how* she considered [obesity] and what conclusions she drew from that consideration." 2022 WL 18936086, at *8 (emphasis in original). In remanding, the Court noted that "neither the ALJ's RFC analysis *nor the opinion evidence* that the ALJ relied on mention[ed] Plaintiff's obesity." *Id.* at *7 (emphasis added) (quoting *Cassandra W. v. Kijakazi*, No. 1:20-cv-153, 2022 WL 279828, at *7 (D. Md. Jan. 31, 2022)). The Court explained that "an ALJ's analysis of obesity does not need to be incredibly extensive, but there must be more than an 'utter lack of analysis' of the plaintiff's obesity." *Id.* at *8. Unlike in *Daisy F.*, the ALJ's RFC analysis, here, combined with her adoption of the medical opinions (which expressly considered Plaintiff's obesity) satisfy that requirement.

The claimant in *Cassandra W.* had severe impairments of carpal tunnel syndrome, obesity, degenerative joint disease, arthrocentesis of the left shoulder and left elbow, and osteoarthritis of the knees, among other impairments. 2022 WL 279828, at *3. "Even though the ALJ found Plaintiff's obesity to be a severe impairment and explained why obesity did not meet a listing, neither the ALJ's RFC analysis *nor the opinion evidence* that the ALJ relied on mention[ed] Plaintiff's obesity, requiring remand." *Id.* at *7 (emphasis added). Again, contrary to that case, the ALJ here not only provided additional analysis of Plaintiff's allegations regarding his inability to work due to his bodyweight and other impairments, but she also analyzed the medical evidence,

15

Plaintiff's daily activities, and medical opinion evidence which considered Plaintiff's obesity, alone and in combination with his other impairments. The *Cassandra W.* court also recognized that remand for "failure to consider a claimant's obesity more thoroughly" may not be appropriate where an ALJ "reli[ed] on an opinion by a medical expert." *Id.* at *5.

Finally, in *Kimberly W.*, the claimant—who had severe impairments of fibromyalgia, lumbar spine disorder, bilateral hip disorder, left knee disorder, polyarthralgia (pain in multiple joints), and obesity—testified to having constant pain in her back, hips, left knee, and foot, which required her to change positions every two minutes and lie down during the day. 2021 WL 827075, at *2, 5. She further "assert[ed] that her obesity exacerbated the limitations caused by each of her other severe impairments" yet "the ALJ did not meaningfully discuss the relationship between [the claimant's] 'extreme' obesity and her back, hips, and knee impairments and their effect on her functional abilities." *Id.* The court found "[t]he ALJ's utter lack of analysis or explanation" akin to "a near total failure to examine the effects of [the claimant's] obesity," thus justifying remand. *Id.* Here, on the other hand, the ALJ provided a meaningful analysis of Plaintiff's obesity, alone and as a contributing factor, and explained how resulting effects translated into limitations adopted in the RFC.

## V. CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 10) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 12) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to the Honorable Senior United States District Judge Robert E. Payne and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/

Summer L. Speight
United States Magistrate Judge

Richmond, Virginia
Date: July 29, 2025